**CITY OF GALVESTON, Petitioner,**

v.

**STATE of Texas, Respondent.**

No. 04–0890.

Supreme Court of Texas.

Argued Feb. 16, 2006.

Decided March 2, 2007.

Ramon G. Viada III, Abrams Scott & Bickley, L.L.P., Houston, for Petitioner.

Greg Abbott, Atty. Gen., Rance L. Craft, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Alan Grundy, Office of Attorney General, Austin, for Respondent.

David J. LaBrec, Katherine Elizabeth Anderson, Allyson Elizabeth Holt, Strasburger & Price, L.L.P., Dallas, Kevin D. Jewell, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court, in which Justice O'NEILL, Justice GREEN, Justice MEDINA, and Justice JOHNSON joined.

In the 171 years since the Alamo, San Jacinto, and independence, it appears that Texas has never sued one of its cities for money damages. No one questions that the Legislature may prescribe whether it can do so, and under what conditions. But as the State relies on no such legislation here, the question is whether we should fill that gap. As disputes like this one have apparently been settled throughout Texas history by political rather than judicial means, we hold that the party seeking to change the status quo ought to bear the burden of changing the rules.[1]

This case is not a routine dispute about property damage. The taxpayers have already paid for the roadway repairs here; the only question is whether Galveston taxpayers rather than Texas taxpayers should bear the cost. That is as much a question of allocating taxes as of allocating fault, and not one as to which courts have special expertise. Accordingly, we affirm the judgment of the trial court dismissing this case.

## I. Background

As part of a 1982 agreement with the Texas Department of Transportation for construction of State Highway 275, the City of Galveston agreed to move and maintain nearby utilities. One of those utilities, a City water line, ruptured in 2001 and allegedly caused $180,872.53 in damages to the highway.

The Attorney General filed suit in the name of the State of Texas to recover damages for the City's "negligent installation, maintenance, and upkeep" of its water line and the resulting damage to state property. The City filed a plea to the jurisdiction, special exceptions, and a motion for summary judgment asserting governmental immunity; the trial court granted the jurisdictional plea. A divided court of appeals reversed, holding that cities have no immunity from suit by the State.[2] We granted the City's petition, and now reverse.

## II. Has the Legislature Authorized the State to Sue Cities?

"We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity."[3]

---

1. Cf. *Tooke v. City of Mexia,* 197 S.W.3d 325, 342 (Tex.2006) (noting this Court's opinions upholding immunity, and legislative responses to them); *Fed. Sign v. Texas S. Univ.,* 951 S.W.2d 401, 406–11 (Tex.1997).

2. 175 S.W.3d 1, 17 (Tex.App.-Houston [1st Dist.] 2004).

3. *Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998) (citing *Harris County v. Dillard,* 883 S.W.2d 166, 168 (Tex.1994)).

■ Political subdivisions in Texas have long enjoyed immunity from suit when performing governmental functions like that involved here.[4] While this immunity can be waived, we have consistently deferred to the Legislature to do so;[5] indeed, we have said immunity from liability "depends entirely upon statute."[6] For its part, the Legislature has mandated that no statute should be construed to waive immunity absent "clear and unambiguous language."[7] The State asserts no such statute here.

■ This high standard is especially true for home-rule cities like Galveston. Such cities derive their powers from the Texas Constitution, not the Legislature[8] They have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter."[9] Among those powers is, again, immunity from suit for governmental functions.[10] The question thus is not whether any statute *grants* home-rule cities immunity from suit, but whether any statute *limits* their immunity from suit.[11] Such limits exist only when a statute speaks with "unmistakable clarity."[12] Again, the State asserts no such statute here.

■ This heavy presumption in favor of immunity arises not just from separation-of-powers principles but from practical concerns. In a world with increasingly complex webs of government units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require. The extent to which any particular city, county, port, municipal utility district, school district, or university should pay damages involves policy issues the Legislature is better able to balance.[13] For example, the Legislature's decision to waive immunity for the University of Texas at Tyler[14] but not for the University of Houston[15] is not the kind of line courts can easily draw. The Legislature can also enact damage

4. *See Tooke*, 197 S.W.3d at 332; *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003); *Ellis v. City of W. Univ. Place*, 141 Tex. 608, 175 S.W.2d 396, 398–99 (1943); *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (Tex.1884).

5. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex.2006) ("We have generally deferred to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved."); *see Tooke*, 197 S.W.3d at 332; *Wichita Falls State Hosp.*, 106 S.W.3d at 695; *Fed. Sign*, 951 S.W.2d at 409; *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152 (1960).

6. *Bossley*, 968 S.W.2d at 341.

7. Tex. Gov't Code § 311.034.

8. *See* Tex. Const. art. XI, § 5; *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex.1998) (citing *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex.1975)).

9. *Proctor*, 972 S.W.2d at 733.

10. *See Tooke*, 197 S.W.3d at 332; *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995); *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex.1985); *City of Wichita Falls v. Robison*, 121 Tex. 133, 46 S.W.2d 965, 966 (1932).

11. *See Proctor*, 972 S.W.2d at 733.

12. *Id.; see also In re Sanchez*, 81 S.W.3d 794, 796 (Tex.2002); *Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex.1998); *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 807 (Tex.1984).

13. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex.2003); *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex.2002).

14. *See* Tex. Educ.Code § 76.04.

15. *See id.* § 111.33.

caps that limit the impact of liability,[16] and create exceptions for particular activities.[17] Given the Legislature's recent efforts to channel government claims away from litigation, we have endeavored to avoid across-the-board rulings abrogating immunity.[18]

The Legislature has waived cities' immunity from suit in a few general statutes. In 1969, the Texas Tort Claims Act waived immunity for certain torts.[19] More recently, immunity for local government entities was waived in suits based on written contracts.[20] These statutes are not blanket waivers: they apply only to specified claims, impose limits on damages,[21] differ-

entiate among government entities,[22] and exempt a variety of activities from any waiver at all.[23]

Although the State's claim here might have been asserted as either a tort or breach of contract,[24] the State has never argued or pleaded that it falls under either of these statutes. Nor does it assert that the Legislature has ever passed a general statute unambiguously and unmistakably authorizing the State to sue political subdivisions for money damages. Nor does any statute specifically authorize such suits by the Attorney General, who exercises only those powers authorized by the Constitution or statute.[25]

---

**16.** *See Wichita Falls State Hosp.*, 106 S.W.3d at 698 ("[W]hen waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors.").

**17.** *See* TEX. CONST. art. XI, § 13 (authorizing Legislature to define functions of municipalities as governmental or proprietary).

**18.** *See Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex.2006) (holding that Legislature's more detailed scheme for handling contract claims would be disrupted if "sue and be sued" statutes broadly waived immunity); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex.2001) (refusing to adopt waiver of immunity by conduct after Legislature's adoption of claims procedure).

**19.** Act of May 22, 1969, 61st Leg., R.S., ch. 292, 1969 Tex. Gen. Laws 879 (current version at TEX. CIV. PRAC. & REM.CODE §§ 101.001–.066).

**20.** *See* TEX. LOC. GOV'T CODE §§ 271.151–.160.

**21.** *See id.* § 271.153 (limiting damages to amounts due on contract and prohibiting consequential damages, exemplary damages, and damages for unabsorbed home office overhead); TEX. CIV. PRAC. & REM.CODE §§ 101.023 (limiting damages against cities to $250,000 per person and against other entities to $100,000), 101.024 (prohibiting exemplary damages).

**22.** For example, school districts and junior colleges are liable only when they use motor vehicles, but most other entities are liable for use of personal or real property as well. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.021, 101.051.

**23.** *See, e.g., id.* §§ 101.055 (exempting tax collections, emergency situations, and provision of police or fire protection from waiver of Tort Claims Act), 101.056 (exempting discretionary governmental acts), 101.057 (exempting intentional acts).

**24.** While the duty of subjacent support arises from the general law, *see Friendswood Dev. Co. v. Smith–Sw. Indus., Inc.*, 576 S.W.2d 21, 27–28 (Tex.1978), the contract between the City and the State governs this claim if it spells out the parties' respective rights. *See DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex.1999).

**25.** *See Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex.2001); *Day Land & Cattle Co. v. State*, 68 Tex. 526, 4 S.W. 865, 867 (Tex.1887); *see also* TEX. CONST. art. IV, § 22 (providing that attorney general "shall represent the State in all suits and pleas in the Supreme Court of the State ... and perform such other duties as may be required by law"); TEX. GOV'T CODE § 402.021 ("The attorney general shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals."); *cf.* TEX. CONST. art. V, § 21 ("The County Attorneys shall represent the State in all cases in the District and inferior courts....").

■ This is not a question of *power*, but of *authority*. While the State has the power, for example, to impose a personal income tax, it has no authority to do so without a statewide vote.[26] Likewise, the State has the power to waive immunity from suit for cities, but no authority to do so without the Legislature's clear and unambiguous consent. There is no such authority here.

The Attorney General or the Department of Transportation could have requested legislative consent to sue the City, but neither tried. And judging from the alarmed briefs filed in this case on behalf of hundreds of Texas counties, cities, school boards, mental health centers, and water districts, it is questionable whether they would have succeeded. Given the novelty of this suit, the political nature of all the parties, and the sensitivity of these intergovernmental issues, "[t]he decision as to who should bear responsibility for governmental employees' misconduct should be made by the peoples' representatives."[27]

### III. Should This Court Authorize the State to Sue Cities?

■ The State argues that unambiguous legislation is unnecessary here be-cause the question is not one of waiver, but of the existence of immunity in the first instance. "[I]t remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance."[28] But this distinction is a fine one, as waiving immunity or finding it nonexistent have precisely the same effect.[29] Due to the risk that the latter could become a ruse for avoiding the Legislature, courts should be very hesitant to declare immunity nonexistent in any particular case.

It is true that we recently held in *Reata Construction Corp. v. City of Dallas* that immunity does not exist when a government affirmatively files suit for money damages, although the Legislature had never said so.[30] But that rule had been recognized for decades in both Texas and federal courts.[31] By contrast, the parties here do not point to a single case in which the State has ever been allowed to sue a city for money damages. The court of appeals cited one case each from Texas, Maryland, and Ohio to support its judgment.[32] But in the Texas case, a statute unambiguously rendered cities liable for workers' compensation penalties,[33] a cir-

---

26. *See* Tex. Const. art. VIII, § 24.

27. *Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998).

28. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 375 (Tex.2006).

29. *See Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 814 (Tex.1993) (noting that narrowing scope of governmental immunity would have the same effect as waiver).

30. 197 S.W.3d at 377.

31. *See id.* at 381 (Brister, J., concurring) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia.,* 535 U.S. 613, 616, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)); *Gardner v. New Jersey,* 329 U.S. 565, 573–75, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *Kinnear v. Texas Comm'n on Human Rights,* 14 S.W.3d 299, 300 (Tex.2000); *Anderson, Clayton & Co. v. State ex rel. Allred,* 122 Tex. 530, 62 S.W.2d 107, 110 (Tex.1933).

32. 175 S.W.3d 1, 6–9 (Tex.App.-Houston [1st Dist.] 2004).

33. *See Texas Workers' Comp. Comm'n v. City of Eagle Pass/Texas Mun. League Workers' Comp. Joint Ins. Fund,* 14 S.W.3d 801, 806 (Tex.App.-Austin 2000, pet. denied); see also Tex. Lab.Code § 415.021; Tex. Gov't Code § 311.005(2).

cumstance not present here. And while the common law of governmental immunity in Maryland and Ohio is certainly interesting, it is entirely alien to our own— Maryland cities and counties have long been subject to contract suits by private parties,[34] and Ohio courts have subsequently abolished immunity altogether.[35]

Moreover, none of the policies behind governmental immunity were implicated in *Reata*,[36] while they would be here. First, when the State sues a private party, the general public stands to lose nothing;[37] but when the State sues a city, a substantial part of the public will no longer be shielded "from the costs and consequences of improvident actions of their governments."[38] While this case involves $180,000 (a small amount relative to most government budgets), the rule we adopt today must apply even if the claim is for $180 million, or billion. If a levee or skyscraper collapses, issues of fault and causation pale in comparison to issues of who can bear and repair such staggering losses. These are precisely the kinds of issues more suited to the Legislature than the courts.

Second, there are jurisdictional problems in asking courts to enforce a judgment against a government entity, even if it is a local one.[39] If the State can sue cities successfully, what will the courts do if the cities refuse to pay? Will courts order them to raise taxes, or impound funds for police, fire, or sanitation workers so the State can collect? Or will the court order execution on city property—perhaps its parks, buses, water works, or airport?

Third, there is the problem of fundamental fairness. As we noted in *Reata*, "it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it."[40] In this case, finding immunity nonexistent would mean the State can sue the City, but the City cannot sue the State.[41] If the Legislature chooses to adopt such a rule, so be it. But until then, fundamental fairness weighs against our doing so.

We do not, as the dissent suggests, defer to the Legislature to decide whether immunity exists; for the reasons noted above, we decide that it does. But we do defer to the Legislature—as we always have done—to decide whether and to what

---

**34.** *See Am. Structures, Inc. v. City of Baltimore*, 278 Md. 356, 364 A.2d 55, 56 (1976).

**35.** *See Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, 442 N.E.2d 749, 752 (1982).

**36.** *See Reata*, 197 S.W.3d at 377 (noting that governments that file suit have affirmatively decided to incur litigation costs, and will not have their fiscal planning disrupted if counterclaims are limited to offsets); *id.* at 382–83 (Brister, J., concurring) (detailing how allowing offsets against governmental entities that file suit "is consistent with all of the purposes of sovereign immunity").

**37.** *Id.* at 375 (majority opinion).

**38.** *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex.2006) (noting that an important purpose of immunity "as it has come to be ap-

plied to the various governmental entities in this State ... [is] to shield the public from the costs and consequences of improvident actions of their governments").

**39.** *See Reata*, 197 S.W.3d at 381 (Brister, J., concurring) (noting that immunity is based in part on "concerns about a court's power to order the government to appear, give evidence, and pay a judgment").

**40.** *Id.* at 375–76 (majority opinion).

**41.** *See Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex.2004) (holding city cannot sue state without waiver of immunity).

extent that immunity should be waived.[42]

## IV. Does Logic Require that the State Be Allowed to Sue Cities?

The State argues that because the City's immunity is derived from the State, it "defies logic" to allow it to be asserted against the State.

First, the primary question here is not logic, but legislative intent. Judges cannot simply abrogate immunity every time they believe the Legislature's failure to do so "defies logic." For all the reasons noted above, legislation rather than logic governs immunity, just as Holmes said experience rather than logic governs the common law.[43]

Moreover, there are several difficulties with the logic that cities cannot invoke immunity against the State because they derive their immunity from it. First, there is the historical difficulty that the City of Galveston is older than the State itself.[44] More important, both ultimately derive their authority from the people;[45] if immunity cannot logically be invoked against one from whom it is derived, it is hard to see how the State has been invok-ing it against Texas citizens for more than a century.

■ But the major flaw in this rea-soning is that it assumes the State "gave" immunity to cities. That is simply not the case. Cities are not created by the State, but by the Constitution and the consent of their inhabitants.[46] Immunity was not be-stowed by legislative or executive act; it arose as a common-law creation of the judiciary.[47] As already noted, the same policies that led courts to recognize immu-nity in the first place still apply when the plaintiff is the State. The Legislature, of course, may change the common law, and has broad power to say whether cities are immune from suit.[48] But until it does so, the same logic that created governmental immunity for cities protects them from suits by the State for money damages.

Moreover, the State's logic goes too far. All state agencies derive immunity from the State, so presumably the State could sue one agency on behalf of another. Be-sides playing havoc with their budgets, this would conflict with the Legislature's pref-erence that such disputes be settled by the State's administrators and accountants, not the State's lawyers.[49] And while cities are

42. *See* Tex. Const. art. V, § 1. ("The Legisla-ture may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof. . . .").

43. O. Holmes, The Common Law 1 (1881).

44. *See* 11 Encyclopedia Britannica 431 (1911) (stating that the town was incorporated by the Legislature of the Republic of Texas in 1839).

45. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex.2003).

46. *See* Tex. Const. art. XI, § 5; *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 814 (Tex.1993).

47. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex.2006).

48. *See* Tex. Const. art. XI, § 13(a) ("Notwith-standing any other provision of this constitu-tion, the legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassi-fying a function's classification assigned un-der prior statute or common law.").

49. *See* Tex. Gov't Code § 2009.002 ("It is the policy of this state that disputes before gov-ernmental bodies be resolved as fairly and expeditiously as possible and that each gov-ernmental body support this policy by devel-oping and using alternative dispute resolution procedures in appropriate aspects of the gov-ernmental body's operations and programs."); *see also* Tex. Transp. Code § 203.058 (provid-ing for vouchers and accounting adjustments if Department of Transportation acquires

clearly subdivisions of the State,[50] that fact alone determines the question before us only if an entity can sue itself—a proposition that makes little sense.

While allowing the State to sue cities might not open Pandora's box (as the dissent below maintained),[51] it would certainly open a can of worms. The current Attorney General's plans to file few suits against cities is no guarantee of the future. If cities have no immunity against the State, they must begin preparing immediately for potentially unlimited liability.

█ We have said that "all governmental immunity derives from the State, and a governmental entity acquires no vested rights against the State."[52] But while the State undoubtedly may revoke the City's immunity at any time, the question is whether it can do so at the instance of the Attorney General rather than the Legislature.[53] As the divided opinions here and below suggest, reasonable judges may disagree whether the inherent nature of cities and states should render the former immune from suits by the latter. We can avoid basing today's decision on our personal inferences only by adhering to the traditional rule that requires unambiguous legislation before setting immunity aside.[54]

## V. Conclusion

Texas has long required the Legislature's permission to bring suit against governmental entities.[55] There is no reason the Attorney General or the Department of Transportation could not have applied for such permission here.

Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the State's claim.

Justice WILLETT filed a dissenting opinion, in which Chief Justice JEFFERSON, Justice HECHT, and Justice WAINWRIGHT joined.

Justice WILLETT, joined by Chief Justice JEFFERSON, Justice HECHT, and Justice WAINWRIGHT, dissenting.

Much about this case is novel. We have found no instances where Texas has sued one of its cities for money damages. And this Court has never before said legislators rather than judges must determine the existence vel non of court-created immunity. From the start and whatever the outcome, this case was destined to be precedent-setting.

The Court makes the best arguments that can be made for rejecting "State v. City" suits, but I remain unpersuaded and

property from other state agencies); Tex. Gov't Code § 531.035 (providing that Health and Human Services commissioner "shall arbitrate and render the final decision on interagency disputes").

**50.** *See Reata*, 197 S.W.3d at 374.

**51.** 175 S.W.3d at 25 (Keyes, J., dissenting).

**52.** *Tooke v. City of Mexia*, 197 S.W.3d 325, 345 (Tex.2006).

**53.** *Cf. Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 740 (Tex.1980) (holding husband's acceptance of workers' compensation benefits after injury did not release wife's derivative

claim); *see also Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807 (Tex.1980) (holding release of agent did not release principal).

**54.** *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 695 (Tex.2003) ("Under our form of government, the state derives its authority from 'the people.' In Texas, the people's will is expressed in the Constitution and laws of the State. Consequently, to waive immunity, consent to suit must ordinarily be found in a constitutional provision or legislative enactment."). (citations omitted).

**55.** *Fed. Sign v. Texas S. Univ.,* 951 S.W.2d 401, 411 (Tex.1997) (citing Tex. Civ. Prac. & Rem.Code §§ 107.001–.005).

respectfully dissent. I agree with the court of appeals that the State's immunity cannot be turned against the State itself.

The crux of my disagreement is simple: The Court says only legislative consent can abrogate a city's immunity no matter what, even when the plaintiff is the State, and I believe a city's immunity is nonexistent when the plaintiff is the State. Waiver presupposes that there is something to waive, and there is no need to waive what does not exist.

Today's case may be unheard-of, but in my view the principles underlying Texas immunity law coupled with our relevant case law favor the State's position: the State's immunity cannot bar a suit by the State itself in its own courts.

## I. Determining the Existence and Boundaries of Common–Law Immunity Is a Judicial Responsibility

The Court urges that disputes like this one are "more suited to the Legislature than the courts,"[1] but less than a year ago in *Reata* we held that "it remains the *judiciary's* responsibility to define the boundaries of the common-law doctrine [of sovereign immunity] and to determine under what circumstances sovereign immunity exists in the first instance."[2] That is no less true today than it was eight months ago.

The Court is undoubtedly correct that disputes between municipalities and the State have historically been resolved "by political rather than judicial means,"[3] but that is only because the State, for whatever reason(s), never forced the issue via litigation. As a society we are fortunate that countless would-be litigants heed President Lincoln's admonition to "compromise whenever you can" and resolve disputes peaceably short of litigation,[4] but when lawsuits erupt, it remains the judiciary's solemn duty to adjudicate them.[5] The Court says only legislators should abrogate immunity, but punting to the Legislature itself constitutes abrogation—our own. This Court has repeatedly held that "sovereign immunity is a creature of the common law and not of any legislative enactment."[6] Before tackling waiver, there is an antecedent question here: whether governmental immunity even exists in a case like this. This Court created governmental immunity; this Court delineates its terms (absent legislation); and this Court must decide whether it exists in such cases. The Legislature's focus is critical but confined; its role is limited to waiving *pre-existing* common-law immunity.[7] Obviously, if the Legislature had spo-

---

1. 217 S.W.3d 466, 472.

2. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex.2006) (emphasis added).

3. 217 S.W.3d at 468.

4. Abraham Lincoln, Fragment: Notes for a Law Lecture, *in* 2 COLLECTED WORKS OF ABRAHAM LINCOLN 81, 81 (Roy P. Basler ed., 1953).

5. *Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 779 (Tex.2005) ("[T]he judiciary's duty is to decide the legal issues properly before it without dictating policy matters.").

6. *Tex. A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex.2002) (plurality opinion).

7. *See Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994) (reaffirming that "waiver of governmental immunity is a matter addressed to the Legislature"); *see also City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex.1997) (explaining "that the Tort Claims Act does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist"); *Thomas v. Oldham*, 895 S.W.2d 352, 357 (Tex.1995) (noting that the "Tort Claims Act created a limited waiver" of common-law immunity).

ken statutorily to today's issue, we would dutifully follow the Legislature's wishes, but it has not. And the Legislature can certainly codify any disagreements with what we say. But however uncommon and however unwelcome, the question is now squarely presented, and as we recognized in *Reata*, it is this Court's duty to squarely decide it.[8]

It is true, as we reaffirmed in *Wichita Falls State Hospital v. Taylor*, that "the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity,"[9] but this maxim presupposes that immunity in fact already exists and does not suggest that courts are ill-equipped to determine its threshold existence.[10] Whether and to what extent to waive common-law immunity are primarily legislative judgments; whether there is anything to waive is a judicial judgment. To say that waiver of sovereign immunity is best left to the Legislature does not mean that every assertion of immunity by every governmental unit is valid and that courts are powerless to hold otherwise. As we recently stated in *Reata*, "Sovereign immunity is a common-law doctrine that initially developed without any legislative

or constitutional enactment."[11] Far from a judicial incursion, and as we held just 245 days ago in *Reata*, it is incumbent upon the judiciary to delimit its boundaries and decide whether it exists in the first place.[12]

Accordingly, while the Court notes "the political nature of all the parties, and the sensitivity of these intergovernmental issues,"[13] I believe that the issue of the existence of governmental immunity vel non is not judicially unmanageable, but properly before us as the institution that recognized governmental immunity in the first instance. The existence and scope of that court-created immunity are front and center, and I see no prudential or jurisdictional impediment to deciding them.

## II. States Possess Inherent Sovereignty and Inherent Immunity; Cities Possess Neither

The State of Texas, of course, is a stand-alone sovereign entity.[14] While the States forfeited certain attributes of sovereignty when they entered the federal system, they retained "a residuary and inviolable sovereignty,"[15] and central to that pre-

---

8. The Court declares that "waiving immunity or finding it nonexistent have precisely the same effect," 217 S.W.3d at 471, but the distinction is more fateful than fine. Whether Texas cities inherently possess immunity from suit, or instead borrow the State's, is in my view legally dispositive. It is one thing to waive my Fifth Amendment right to remain silent but quite another to hear that no such right exists in the first place.

9. 106 S.W.3d 692, 695 (Tex.2003); *see also Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex.1997) ("[T]his Court has uniformly held that it is the Legislature's sole province to waive or abrogate sovereign immunity.").

10. We also wrote in *Taylor* that this Court, like those in other jurisdictions, has not "foreclosed the possibility that the judiciary may abrogate immunity." 106 S.W.3d at 695–96.

If this Court has the authority to consider abolishing immunity, then we may certainly determine its existence.

11. 197 S.W.3d at 374.

12. *See id.*

13. 217 S.W.3d at 471.

14. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (noting that the United States Constitution " 'specifically recognizes the States as sovereign entities' ") (quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 71 n. 15, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)).

15. *Printz v. United States*, 521 U.S. 898, 919, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (quoting THE FEDERALIST No. 39 (James Madison)).

served sovereignty is " 'the States' traditional immunity from private suits.' " [16] Such immunity is an inherent attribute of sovereignty. By contrast, the City of Galveston is a political subdivision of the State,[17] and as we held 60 years ago, municipalities have no sovereignty apart from the state,

> are creatures of our law and are created as political subdivisions of the state as a convenient agency for the exercise of such powers as are conferred upon them by the state. They represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them.[18]

The United States Supreme Court holds the same view, declaring, "Ours is a *'dual* system of government,' which has no place for sovereign cities." [19] Leading legal commentaries agree that under our constitutional framework, "municipalities, unlike states, are not sovereigns." [20] The equation is simple and well-established: there is no inherent immunity absent inherent sovereignty.[21] Or as one Texas court plainly put it, "a city has no sovereignty of its own and likewise no immunity of its own...." [22]

## III. A City's Governmental Immunity Is a Common–Law Extension of the State's Inherent Sovereign Immunity[23]

This Court in 1884 articulated the general common-law rule of "governmental

16. *Alden,* 527 U.S. at 724, 119 S.Ct. 2240.

17. Tex. Civ. Prac. & Rem.Code § 101.001(3)(B) (including "any city" among the listed political subdivisions); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994).

18. *Payne v. Massey,* 145 Tex. 237, 196 S.W.2d 493, 495 (Tex.1946).

19. *Cmty. Commc'ns Co. v. City of Boulder,* 455 U.S. 40, 53, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982) (citation omitted); *Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) ("Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities.").

20. 18 Eugene McQuillin, The Law of Municipal Corporations § 53.02.10 (3d ed.2004) (hereinafter McQuillin).

21. Unlike the Court, I see no legal significance in the City's status as a home-rule city, which the City insists elevates it to the level of a sovereign entity vested with inherent immunity. While home-rule cities possess the power of local self-government, *see* Tex. Loc. Gov't Code § 51.072, this Court's settled view is that Texas cities, home-rule or otherwise, are deemed to be State agents for immunity purposes when performing governmental functions, subject to state control, *Proctor v. Andrews,* 972 S.W.2d 729, 734 (Tex.1998), with "no sovereignty distinct from the state," *Massey,* 196 S.W.2d at 495. Immunity from suit is an inherent attribute of sovereignty, some-

thing that only the federal and state governments have. A home-rule city's governmental immunity springs from the common law, and nothing in Texas law suggests that the governmental immunity afforded home-rule cities is more muscular than that afforded "lesser" municipalities. Texas cities—however constituted—are afforded *the State's* immunity when performing governmental functions because they are acting as the State's agents. More to the point, this "home-rule sovereignty" argument was rejected by the United States Supreme Court in *Community Communications Co. v. City of Boulder,* 455 U.S. at 53–54, 102 S.Ct. 835. In that case, the City of Boulder argued that its home-rule status entitled it to an exemption from the Sherman Act since its sovereignty derived directly from the people via the Colorado Home Rule Amendment. *Id.* at 52, 102 S.Ct. 835. The Court disagreed and refused to grant the City antitrust immunity under the so-called "state action" doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Court reasoned that the City of Boulder's constitutional home-rule status was insufficient to confer sovereign privileges because "[o]urs is a *'dual* system of government,' which has no place for sovereign cities." *Cmty. Commc'ns Co.,* 455 U.S. at 53, 102 S.Ct. 835 (citation omitted).

22. *State v. Brannan,* 111 S.W.2d 347, 348–49 (Tex.Civ.App.-Waco 1937, writ ref'd).

23. The doctrines of sovereign and governmental immunity are related but distinguishable;

immunity" for municipalities, holding that the State's sovereign immunity would protect cities when performing public functions on behalf of the State but not when performing "proprietary" functions.[24]

In the intervening 123 years, we have repeatedly held that a city has no immunity of its own but is afforded the State's immunity when acting as the State's agent and performing governmental functions for public benefit.[25] The City dismisses as a "semantic ruse" the argument that the City is an "agent" of the State and that its immunity is "derivative." If this is an artifice, it is a well settled one, representing this Court's uniform view throughout

> sovereign immunity protects the State itself (and various divisions of state government) while governmental immunity protects political subdivisions. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 324 (Tex.2006); *Taylor,* 106 S.W.3d at 694 n. 3.

24. *City of Galveston v. Posnainsky,* 62 Tex. 118, 127, 130–31 (1884).

25. *See, e.g., Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 n. 12 (Tex.2000) ("[A] city is deemed an agent of the state for sovereign immunity purposes when exercising its powers for a public purpose."); *City of Houston v. Shilling,* 150 Tex. 387, 240 S.W.2d 1010, 1011 (Tex.1951) (" '[T]he rule is recognized that a municipality is exempt from liability when it performs a duty imposed upon it as the arm or agent of the state in the exercise of a strictly governmental function solely for the public benefit.' " (quoting *City of Amarillo v. Ware,* 120 Tex. 456, 456, 40 S.W.2d 57 (Tex.1931))).

26. *Posnainsky,* 62 Tex. at 127.

27. *Gates v. City of Dallas,* 704 S.W.2d 737, 738–39 (Tex.1986).

the nineteenth,[26] twentieth,[27] and twenty-first centuries.[28] This derived-immunity principle is the accepted view among legal commentators, too,[29] as well as numerous Texas courts of appeal.[30]

## IV. A City's Derivative Immunity Thwarts Suits Brought by Private Parties, Not Suits Brought by the State Itself

Since cities possess no free-standing sovereignty and instead borrow the State's, it is conceptually untenable to allow a city, a legal and geographical subdivision of the State, and subject to State control, to assert governmental immunity against the sovereign that controls it.[31] As one leading treatise observes:

28. *Fort Worth Indep. Sch. Dist.,* 22 S.W.3d at 840 n. 12.

29. "A municipality derives its general tort immunity from the state because it is deemed to act as the state's arm or agent when performing governmental functions." 18 McQuillin § 53.24.

30. *See, e.g., Tex. Workers' Comp. Comm'n v. City of Eagle Pass/Tex. Mun. League Workers' Comp. Joint Ins. Fund,* 14 S.W.3d 801, 803–04 (Tex.App.-Austin 2000, pet. denied); *City of Crystal City v. Crystal City Country Club,* 486 S.W.2d 887, 889 (Tex.Civ.App.-Beaumont 1972, writ ref'd n.r.e.). Moreover, while the Court eschews the notion that "an entity can sue itself," 217 S.W.3d at 474, there is nothing novel about allowing a principal to sue his agent. The Restatement of Agency, in fact, devotes a whole chapter to the duties and liabilities of the agent to his principal. Restatement (Second) of Agency §§ 376–431 (1958).

31. We note that a similar argument would not necessarily apply to a State in relation to the federal government. As a historical matter States possessed and retained a certain measure of sovereignty when they joined the United States, and a component of that sovereignty was sovereign immunity. *See Alden,* 527 U.S. at 712–27, 119 S.Ct. 2240.

A municipality derives its general tort immunity from the state because it is deemed to act as the state's arm or agent when performing governmental functions. Therefore, it would be illogical to allow a municipality sued by the state to assert its immunity against the very source of that immunity.[32]

I agree. A necessary corollary to the notion that cities borrow their common-law immunity from the State, a notion rooted in basic Texas immunity law, is that a city cannot wield the State's own immunity against the State itself. It is indeed mystifying that the State's immunity could be used to undermine the State's sovereign interests.

It also merits mention that two other state supreme courts have reasoned that the derivative nature of a municipality's immunity prevents cities from asserting immunity against a tort claim brought by the State.[33] The Maryland Supreme Court held that "the immunity of counties and municipalities is derived from the State's sovereign immunity" and "the nature of governmental immunity for counties and municipalities prevents them from asserting the defense of immunity when sued by the State or a State agency."[34] The Ohio Supreme Court has likewise held that a municipality cannot assert immunity against the State's negligence action, noting that it is inscrutable to let a city assert immunity against the State itself.[35]

While the laws of Maryland and Ohio differ from Texas law in some respects, as the Court's opinion details,[36] the analysis

---

**32.** 18 McQuillin § 53.24. The United States Supreme Court spoke to immunity's early history in *Alden v. Maine*, 527 U.S. at 741, 119 S.Ct. 2240, noting, "In England, the rule was well established that 'no lord could be sued by a vassal in his own court, but each petty lord was subject to suit in the courts of a higher lord.'" (quoting *Nevada v. Hall*, 440 U.S. 410, 414–15, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979)). The Court in *Alden* recognized that it is one thing to say that a lord cannot be sued by one of his serfs, and quite another to say that this principle shields the lord from any claim for redress from his king.

**33.** These are apparently the only two published cases in the nation confronting the question before us.

**34.** *Bd. of Educ. v. Mayor & Common Council*, 320 Md. 384, 578 A.2d 207, 210 (Md.1990) (a tort case where a state agency sued town officials for property damage to a school caused by leaks from an underground gas tank maintained by the town).

**35.** *State v. City of Bowling Green*, 38 Ohio St.2d 281, 313 N.E.2d 409, 412 (Ohio 1974) (a tort case where the state sued the city after numerous fish were killed by the city's negligent operation of a sewage-treatment plant).

In this case, the Ohio Supreme Court explained:

> [A] municipality is not directly clothed with or relieved from immunity from liability in tort by any constitutional provision. Its immunity is derivative; it arises because the municipality, when performing a governmental function, is acting as an arm or agent of the state.
>
> Where a municipality negligently performs a governmental function, and as a proximate result thereof a private injury is caused, the injured party cannot maintain a damage suit against the municipality because the city is clothed with the state's immunity. In such a situation the state is analogous to a principal with immunity, and the municipality to an agent, and the injured party to a third person. The immunity of the principal filters down to the agent. However, where the injured party is the state itself, this analogy disintegrates. Instead, the situation resembles a suit by a principal against an agent whose negligence has resulted in damage to the principal. In such a situation it would be illogical to allow the municipality to assert its general tort immunity against the very source of that immunity.

*Id.* at 412 (footnote omitted).

**36.** 217 S.W.3d at 472 & nn. 35–36.

of these state high courts pivoted not on any oddities of Maryland and Ohio law, but on the same fundamental legal principles that form the crux of the instant dispute: whether a city may wield its borrowed immunity against the State that loaned it.[37]

For years and unsuccessfully, injured parties have castigated the legal doctrine of immunity as fundamentally unfair.[38] Another one-sided truism of immunity is this: what the State giveth, the State can taketh away. That is true in the Tort Claims Act, where the State waives tort immunity but then carves out numerous exceptions to that waiver,[39] or here, where the State shares its immunity with cities but then yanks it back when it decides to sue one. Like a teenager's allowance, a city's derived immunity rises or falls (or disappears) on the sovereign's whim and benevolence.

## V. The City's Alternative Arguments Also Miss the Mark

The City and amici posit several alternative arguments, all unpersuasive.

For example, they warn strenuously that if political subdivisions are not afford-ed immunity from State negligence suits, municipal coffers will be raided and plundered by state agencies. Whether such criticism portends a Pandora's box or merely a can of worms, such alarm is misdirected and unwarranted.[40]

There exist specific constitutional, budgetary and pragmatic safeguards that, while not guaranteeing the total absence of imprudent litigation, would certainly militate against indiscriminate suits. First, such litigation would not be launched willy-nilly by a rogue, unaccountable state agency, but by or with the express approval of the Attorney General in the name of the State of Texas, acting within the scope of his authority as a constitutional officer and State government's principal lawyer. As we have noted, "The Attorney General, as the chief legal officer of the State, has broad discretionary power in conducting his legal duty and responsibility to represent the State."[41] Moreover, "[t]he Attorney General is a member of the Executive Department whose primary duties are to render legal advice in opinions to various political agencies and to represent the State in civil litigation."[42] The Appropria-

---

**37.** The Austin Court of Appeals reached the same conclusion in *City of Eagle Pass,* 14 S.W.3d at 803. In that case, the court rejected the argument of two political subdivisions that they were immune from Commission-assessed penalties absent an unequivocal waiver of their immunity. The court stressed the derivative nature of governmental immunity and, quoting our decision in *Payne,* concluded that "[b]ecause political subdivisions of the State do not possess such independent sovereignty, they have no immunity as against the State." *Id.* at 803.

**38.** The Court raises that objection here, casting it as one of "fundamental fairness." 217 S.W.3d at 472. But just as immunity is inherent to sovereignty, unfairness is inherent to immunity. Indeed, that is precisely the point of one-sided immunity—to let government off the hook. In any event, under *Reata,* if the

State sues for monetary damages, it waives immunity from any relevant offset counterclaims. 197 S.W.3d at 376–77.

**39.** Tex. Civ. Prac. & Rem.Code §§ 101.001–101.109.

**40.** The Court says a trial court may have trouble enforcing a judgment against a government defendant who refuses to pay damages, 217 S.W.3d at 472–73, but this is not a novel concern. Such difficulties are no more acute here than when a private plaintiff successfully sues a government entity on a claim for which legislators have waived immunity.

**41.** *Terrazas v. Ramirez,* 829 S.W.2d 712, 721 (Tex.1992).

**42.** *Perry v. Del Rio,* 67 S.W.3d 85, 92 (Tex. 2001).

tions Act makes clear that a state agency cannot use appropriated funds to "initiate a civil suit or defend itself against a legal action without the consent of the Attorney General."[43] In addition, the Appropriations Act and the Texas Government Code both require the Attorney General's express approval of a state agency's request to retain outside legal counsel.[44] Again, such oversight does not prevent all inadvisable litigation—whether the caption reads "*State v. City*" or "*State v. ACME Widget Co.*"—but it imposes a measure of accountability, however imperfect.

Second, a Legislature displeased with certain litigation could arguably enact additional budgetary measures to starve any disfavored lawsuits and put strict conditions on how public funds are spent. Also, the Legislature is well-equipped to counter almost any Court ruling it dislikes, and if it believes that permitting "*State v. City*" suits will embolden the State to run roughshod over cash-strapped cities, it can severely restrict or proscribe such suits altogether if it chooses.

If anything, "the political nature of all the parties, and the sensitivity of these intergovernmental issues,"[45] cited by the Court as reasons to defer to the Legislature, would themselves help deter unreasonable suits. One meaningful political brake is that the Attorney General, aside from seeking funding from the Legislature every two years, has to reapply for his job every four years. Facing millions of Texas voters imposes an electoral safeguard that, while it cannot foreclose an obdurate and vengeful Attorney General Javert, at least imposes a political check in lieu of or in addition to legislative oversight. The Attorney General is politically answerable to voters throughout Texas, including voters in any municipality subject to suit, and also answerable to their respective representatives and senators who can intervene to counter adverse litigation and rein in any perceived missteps. Finally, the Attorney General, to put it mildly, faces innumerable other priorities and responsibilities when deciding how to deploy his limited litigation resources.

Among the City's myriad "sovereignty" arguments, it argues that the Attorney General exceeded his constitutional authority and violated the separation of powers by initiating this suit: "The Attorney General has no power or right to speak for the sovereign people concerning whether local governments enjoy immunity from suit by the State on behalf of TxDOT." This argument rests upon a flawed premise and distorts the nature of the instant litigation. The Attorney General has not single-handedly abrogated the City's governmental immunity; that immunity determination is for this Court, not the Attorney General. The Attorney General filed suit on the State's behalf to seek redress for damage to the State's sovereign property rights.[46] The existence and scope of governmental immunity is controlled by this Court's application of common-law principles, not the Attorney General's election to bring suit. While the Attorney General may in limited circumstances waive the *State's* sovereign immunity by suing on the State's behalf,[47]

---

43. General Appropriations Act, 79th Leg., R.S., ch. 1369, art. IX, § 6.21(b), 2005 Tex. Gen. Laws 4324, 5158.

44. *Id.* § 6.21(a); Tex. Gov't Code § 402.0212.

45. 217 S.W.3d at 471.

46. We recently reaffirmed that the State holds a *superior right of ownership* in public roads. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644–45 (Tex.2004) (noting that a city merely holds roads in trust for the benefit of the State).

47. *See Reata*, 197 S.W.3d at 376–77 (a governmental entity that brings an affirmative claim for monetary damages waives immunity for offset claims that are germane to, connect-

even the State's principal lawyer is powerless to nullify a *city's* common-law governmental immunity. In short, the Attorney General cannot waive what does not exist. The City's asserted immunity should fail here not because the Attorney General says so, but because its derivative nature renders it wholly nonexistent against the State. Although the Attorney General controls litigation on behalf of the State, filing an action that exposes the absence of common-law governmental immunity is not the same as invading the Legislature's province to waive pre-existing immunity. The City makes no persuasive argument that the Attorney General overstepped his authority if he is correct, as I believe he is, that a State-created subdivision cannot turn its borrowed immunity against the State itself.

## VI. Conclusion

In this case, where you end up depends on where you start. The Court's starting point is that a city cannot be sued unless the Legislature has unmistakably waived immunity. I agree wholeheartedly when the petition reads *"Citizen v. City "* but in the exceedingly rare case when it reads *"State v. City,"* there is nothing for the Legislature to waive.

I respectfully dissent because I believe that history, logic, precedent, and the underlying justifications for recognizing governmental immunity in the first place all weigh against recognizing its existence in this case.

ed with, and properly defensive of affirmative    claim).