# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-11-00330-CV
---

**City of Austin, Texas, Appellant**

**v.**

**David Saverse, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-10-001324, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Appellant David Saverse sued the City of Austin ("the City") seeking damages for personal injuries he suffered when a tree limb fell on him while he was visiting a city-owned park. The City filed a plea to the jurisdiction asserting that its governmental immunity barred the suit. The trial court denied the plea to the jurisdiction, and the City appealed. We will reverse the trial court's order.

## BACKGROUND

Saverse's original petition contains the following allegations: On August 8, 2008, Saverse and his family were attending a performance at an outdoor theater in Zilker Park, a park located in Austin and owned by the City. Saverse was walking from the park's amphitheater to the restroom facilities when a limb from a large pecan tree fell and hit him in the head. The limb also damaged several cars parked under the tree. As a result of the incident, Saverse suffered severe

personal injuries. In April 2010, Saverse filed suit against the City alleging that, while engaged in recreation, he was injured as a result of the City's gross negligence or willful or wanton acts.

The City answered and filed a plea to the jurisdiction asserting that Saverse's pleadings affirmatively negated the existence of jurisdiction with respect to the element of duty and, alternatively, asserting its governmental immunity and contending that Saverse did not plead jurisdictional facts sufficient to establish a waiver of immunity. The City attached to its plea the affidavit of Walter Passmore, the City's Urban Forestry Program Manager. Saverse filed a response to the plea, attaching his own affidavit, excerpts from Passmore's deposition, Passmore's affidavit, a report prepared by arborist John Sevier, a City of Austin Barton Springs Pool Tree Assessment Report dated March 2009, and the City's record of tree maintenance in Zilker Park. The trial court denied the City's plea, and the City filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.015(a)(8) (West 2008) (permitting appeal from interlocutory order denying plea to jurisdiction by governmental unit).

## DISCUSSION

A municipality derives governmental immunity from the State's sovereign immunity when the municipality is performing governmental functions. *See City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). The legislature has determined that maintenance and operation of a park is among a municipality's governmental functions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(13) (West 2011). Absent waiver, therefore, the City is immune from suits complaining of injuries occurring at a park, and this immunity deprives the court of subject matter jurisdiction over such suits. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224

2

(Tex. 2004). The Texas Tort Claims Act includes, among other things, a limited waiver of governmental immunity from suits alleging personal injury or death caused by premises defects. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.022 (West 2011). It also provides that in premises-defect cases, a governmental unit owes the claimant only the duty that a private person owes to a licensee on private property. *Id.* § 101.022(a). When injury or death results on city-owned recreational land, however, the Texas "recreational use statute" further limits the city's duty to that owed by a landowner to a trespasser. *Id.* § 75.002; *see also id.* §§ 75.003(g) ("To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the Tort Claims Act], this chapter controls."), 101.058 (same). The only duty a premises owner owes a trespasser is the duty not to injure him wilfully, wantonly, or through gross negligence. *Texas Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997).

Thus, a municipality waives immunity under the Texas Tort Claims Act and the recreational use statute only if it is grossly negligent or if it wilfully or wantonly injures the plaintiff. *Miranda*, 133 S.W.3d at 225. Gross negligence requires that the landowner be actually, subjectively aware of—and consciously indifferent to—an extreme risk of harm. *See id.* Willful and wanton conduct is synonymous with "gross negligence," and means that the act or omission complained of was the result of conscious indifference to the welfare of the person affected by it. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 916-20 (Tex. 1981); *see also Miranda*, 133 S.W.3d at 230-31, 233 (applying gross negligence standard to determine question of waiver of sovereign immunity under recreational use statute).

3

The existence of subject-matter jurisdiction is a question of law that we review de novo. *See Miranda*, 133 S.W.3d at 226. When a plea to the jurisdiction challenges the claimant's pleadings, we construe the pleadings liberally in favor of the claimant to determine whether the claimant has pleaded facts that affirmatively demonstrate the trial court's jurisdiction. *Id*. at 226. If the claimant's pleadings affirmatively *negate* the existence of jurisdiction, the plea may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227. When the plea challenges the existence of jurisdictional facts, the court should consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *See id.*; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000). Such cases fall into two categories: those in which the jurisdictional issue or facts do not implicate the merits of the plaintiff's case and those in which they do. *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.). When, as here, the jurisdictional facts do implicate the merits, and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Miranda*, 133 S.W.3d at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue is resolved by the factfinder at trial. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* The trial court's determination in such a case is a purely legal one that we review de novo, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id*. at 228; *Poindexter*, 306 S.W.3d at 807.

By three issues, the City contends that the trial court erred in denying the plea to the jurisdiction. In its first two issues, the City asserts that Saverse's pleadings and the undisputed evidence negate jurisdiction by establishing that it had no duty to him. In its third appellate issue, the City contends the trial court lacked subject matter jurisdiction over Saverse's claims because there is no genuine issue of material fact regarding whether its conduct constituted gross negligence. This third issue is dispositive here.

The City submitted evidence to controvert Saverse's allegation that its conduct constituted gross negligence. The City attached the affidavit of Walter Passmore, the City's Urban Forestry Manager. Passmore averred that within the three-month period prior to Saverse's injury, the City had conducted two inspections of the trees in the area where the tree at issue in this case is located. While the City does not undertake routine inspection of trees, it conducted an inspection in the area of this tree in response to a damaging storm that occurred in mid-May 2008. A second inspection was conducted in the same area two months later to "revisit non-emergency maintenance issues with certain of the trees." According to Passmore, neither inspection identified a high risk associated with the tree at issue or any of its limbs. Passmore stated that the tree was not referenced in either inspection because a specific tree is identified in a report only if it is noted to have "high risk defects" or if maintenance is performed on the tree.

Passmore's affidavit further described the City's procedures for assessing and maintaining trees on its property. According to Passmore, the City generally relies on a notice or complaint system to notify it of problems or issues with trees. The notices and complaints come from Parks and Recreation Department employees or park patrons. Passmore stated that this

5

approach is consistent with that of other publicly owned parks in Texas and in other states and is, in part, a function of budget constraints that prevent the City from patrolling the parks and routinely inspecting all trees. Once it receives a notice or complaint, the City routes the request to forestry inspectors who then assess the tree to determine the proper course of action. These inspectors are trained to observe and identify risks and defects in trees. If any high-risk defects are identified during an inspection, a tree evaluation form is created.

Passmore further stated that he observed the tree at issue in this case the day after Saverse was injured. Passmore averred that the tree had no visible external indicators that would suggest that it had a high risk to fail and that the City had no prior notice that any condition existed with respect to the tree that would cause its limb to suddenly fall as it did. After the limb failure, however, the tree was assessed and given crown reduction pruning, a treatment option that reduces weight and spread of the crown. Additionally, the City implemented a plan for monitoring the tree's health and condition for any changes.

As evidence of the City's gross negligence, Saverse points to Passmore's deposition in which he testified that, when he inspected the tree the day after Saverse was injured, he noticed evidence of a prior limb failure. Saverse also relies on Passmore's statement in his affidavit that "[p]revious limb failure does indicate an increased potential for future limb failure on a tree." However, Passmore also testified that he could not determine how long ago the previous limb failure had occurred, and his affidavit states that "a limb failure does not mean a tree is a hazard." Saverse further relies on Passmore's testimony that in his opinion, after inspecting the tree, it was in need of crown reduction which would have reduced the risk of limb failure and his agreement with Saverse's

counsel that crown reduction would have "made it less foreseeable that a large limb failure would occur."

Saverse also attached the affidavit of John Sevier, an arborist, who averred that "[i]t was clearly foreseeable by the City of Austin in August 2008, that the subject tree would continue to have tree limb failures." Attached to Sevier's affidavit is a report in which he concluded that the City "knew or should have known that the subject tree was in extremely hazardous condition." As the basis for this conclusion, Sevier relies on observations he made during a site inspection, including that the tree has a "giant wound" that resulted from a "major limb failure, pre-dating the current case." Although Sevier asserted that, in his opinion, the City should have known of the danger and would have known of it had it conducted its own inspection of the tree prior to the limb failure, neither his affidavit nor his report contain any evidence tending to show that the City had actual, subjective knowledge of an extreme degree of risk of harm associated with the tree as required to demonstrate gross negligence.

There was also evidence that four years earlier a tree limb in a different part of the park had fallen and injured visitors to the park. Passmore testified that limb failure is a risk with all mature trees. However, a general appreciation for the fact that limb failure is a possibility with any mature tree, without more, does not constitute evidence of actual, subjective knowledge that the tree at issue presented an extreme risk to park patrons. Having reviewed the evidence presented by both the City and Saverse, we find no evidence that the City had actual, subjective awareness of an extreme risk posed by the tree at issue in this case, nor any evidence that the City chose to proceed "in conscious indifference to the rights, safety, or welfare of others." *Louisiana-Pacific*

7

*Corp. v. Andrade*, 19 S.W.3d 245, 246 (Tex. 1999) (citing *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)). Nothing in the record tends to show that the City "did not care about the consequences" to Saverse of a known risk of extreme danger. *See Miranda*, 133 S.W.3d at 232. To the contrary, the evidence demonstrates that the City had recently inspected the trees in the area in response to weather conditions that may have created a greater risk of danger. There is no evidence that this inspection gave the City notice of an extreme risk that the City then chose to ignore. We sustain the City's third appellate issue.[1]

## CONCLUSION

Having concluded that there is no fact issue regarding gross negligence on the part of the City, the requirements for the Legislature's limited grant of a waiver of immunity under the applicable statutes have not been met, and the trial court lacked subject-matter jurisdiction over Saverse's claims. We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing the cause for lack of subject-matter jurisdiction.

---

[1] Having sustained the City's third issue, we need not address the arguments raised in its first two issues regarding duty.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson
   Dissenting Opinion by Justice Henson

Reversed and Dismissed

Filed:   September 30, 2011