COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CITY OF MONAHANS, TEXAS, | § | No. 08-21-00088-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd Judicial District Court |
| SOUTHWESTERN BELL TELEPHONE COMPANY d/b/a AT&T TEXAS, | § | of Ward County, Texas |
| Appellee. | § | (TC# 19-11-25253-CVW) |

## **O P I N I O N**

Appellant the City of Monahans (the City) brings this interlocutory appeal of the trial court's denial of its plea to the jurisdiction. Appellee Southwestern Bell Telephone Company d/b/a AT&T (AT&T) filed suit alleging that employees of the City negligently damaged a buried cable owned by AT&T while they worked on a water line. In two issues, the City asserts the trial court erred in denying the plea to the jurisdiction because (1) undisputed evidence established the City did not have "actual notice" of AT&T's claim within six months of the incident as required for a waiver of immunity under the Texas Tort Claims Act (TTCA); and (2) the City performed an

activity—emergency repair of a water main—for which governmental immunity was fully retained.[1] We affirm.

## I. BACKGROUND

On Sunday, November 12, 2017, at 10:58 a.m., a 911 caller reported a fire hydrant was leaking and spraying water at 200 S. Betty Avenue in the City of Monahans. After the call was referred to the City's Water Department, Stephen Lario, a field service technician and backhoe operator, was notified of the problem. When Lario arrived on scene, he saw the fire hydrant was missing and water was coming out of the ground.[2] Lario next called his supervisor, Keith Mitchell, who soon arrived on site. After Mitchell determined that emergency repairs[3] were needed, he put in a request to the Police Department to make a Texas 811 locate request (811 request).[4] At approximately 11:58 a.m., the Police Department issued such request.

The City's utility crew described the area where the water was leaking as a hole in the ground "big enough for a car to fit in." As a crew began digging in the area, they could not see any buried utility lines because the hole was full of water and concrete. At approximately 1:30 p.m., the crew struck AT&T's underground telephone line, damaging the line. Mitchell contacted the Police Department to report the damage and to notify AT&T. Up to that point, the City had not received a response to their request asking for the location of AT&T's lines. USIC—a company

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101, 101.0215(a)(11), (32).

[2] The City later learned the cause of the leak was a car hitting the fire hydrant.

[3] In its brief, the City's describes that "emergency repairs required the City's utility crew to excavate at a depth greater than sixteen inches." Such emergency excavation "triggered Texas' one-call laws under Chapter 251 of the Texas Utility Code." *See* TEX. UTIL. CODE ANN. § 251.002(5), .151.

[4] The City is a member of the "Texas 8-1-1" service which is called anytime digging into the ground occurs in order to obtain line locates. The "lines" can be gas lines, electric lines, phone lines, water lines, etc.

2

that contracts with utilities to respond to 811 requests for location of underground lines—showed up on scene at approximately 1:36 p.m.

On December 5, 2017, Mitchell prepared an incident report. A report of this nature, he explained, is prepared "only if there's any damages," such as "if . . . guys strike a . . . a buried line[.]" The one-page report appeared in part as follows:

**CITY OF MONAHANS**

To:

Charges for Damages to:
*AT¢T phone line*

Occurred/Discovered on or About:
*11-12-17 about 11:00 Am*

Approximate Location:
*2ⁿᵈ ¢ Betty Street*

SUMMARY OF CHARGES

The labor cost amount claimed includes direct costs and indirect costs, including but not limited to personnel, equipment, vehicles, administrative overheads, and an allocation of general corporate overhead.

LABOR COST     $

MATERIALS/UNIT COST ITEMS     $

TOTAL AMOUNT DUE:     $

Under the "How Damage Occurred," Mitchell handwrote the following:

> I got a phone call from Steven 11-12-17 about 11:00 a.m. He told me we had a leak at Betty and Second Street. When I got there[,] I called [the] police department and asked them to call 811. That was about 11:45 a.m. At about 1:30 p.m.[,] we hit a phone line. At about 1:36 p.m.[,] USIC showed up. We continued fixing the leak till about 6:00 p.m. The phone lines were still not marked when we left.

The face of the report includes a stamp indicating, "Received," "Dec. 05, 2017," "City of Monahans." Mitchell testified he filed the report in a room called "the map room." When such a report is prepared, he further described that Bobby Sinclair—Director of Public Utilities—would sometimes "look at it," but he could not recall whether that occurred with this report.

Months later, on May 29, 2018, AT&T faxed a letter to the City making a demand for payment pursuant to a claim for damages caused to AT&T's property located at 2nd Street and

Betty, Monahans, Texas, on or about November 12, 2017. The letter indicated the City had caused $42,615.66 in total damages to AT&T's property located at 2nd Street and Betty.

On November 11, 2019, AT&T filed suit against the City alleging employees of the City were negligent in the operation of motor-driven equipment such that immunity was waived under the TTCA. The suit alleged the City had full, complete, and actual knowledge of the occurrence giving rise to AT&T's cause of action. The City filed a plea to the jurisdiction in response, asserting AT&T sent written notice of its claim more than six months after the incident. The City contended such written notice was the first notice, written or otherwise, that AT&T provided to the City regarding its claim for alleged damages to a buried cable line. The City further contended it retained its immunity, subject to the limited waiver provisions of the TTCA, because it was acting in furtherance of its governmental function at the time the incident occurred. The City supported its plea with multiple exhibits including the affidavit of Rex Thee, the City Manager, a copy of the 811-request response sheet, and AT&T's demand letter. The City also filed supplemental affidavits from David Mills, the former City Manager, and Lorena Marquez, the former City Secretary. AT&T responded to the plea, attaching the depositions of Thee, Mitchell, Lario, and Brandon Navarro—a meter technician with the City.

The trial court denied the City's plea to the jurisdiction. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (allowing interlocutory appeals from the granting or denial of plea to jurisdiction by a governmental entity.)

## II.    STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a suit for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Because immunity from suit defeats a trial court's subject matter jurisdiction, such immunity is properly asserted in a

plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). A plea challenging the trial court's jurisdiction raises a question of law reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226-27. When a plea to the jurisdiction challenges a plaintiff's pleadings, the determination turns on whether the pleader has alleged sufficient facts to demonstrate the court's subject matter jurisdiction over the matter. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action. *Kirwan*, 298 S.W.3d at 622. If the evidence creates a fact issue as to the jurisdictional issue, then it is for the fact finder to decide. *Id.* If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

### III. SUBJECTIVE AWARENESS OF FAULT

In its first issue, the City contends the trial court erred in denying its plea to the jurisdiction because the undisputed evidence fails to establish the City had notice of AT&T's claims within six months of the incident. The City argues that AT&T failed to show either that it provided the City with timely, formal notice of a claim or that the City had subjective awareness that its fault caused or contributed to AT&T's damage such as to establish actual notice of a claim under the TTCA.[5] Although AT&T does not contest whether it provided timely, formal notice of its claim to the City, it nonetheless contends the trial court correctly denied the City's plea because the evidence raises at least a fact question regarding the City's actual notice of such claim. AT&T points to the extensive evidence before the Court reflecting the City's knowledge of the incident on the date it occurred, as well as evidence establishing the filing of an incident report nearly a month later.

#### A. Controlling law

As a political subdivision of the State of Texas, the City is generally immune from suits for money damages unless immunity has been clearly and unambiguously waived by statute. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019); *City of El Paso v. Viel*, 523 S.W.3d 876, 882 (Tex. App.—El Paso 2017, no pet.). Such governmental immunity defeats a trial court's subject matter jurisdiction, and thus, it is properly asserted in a plea to the jurisdiction. *Miranda,* 133 S.W.3d at 225-26; *see also City of El Paso v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 894 (Tex. App.—El Paso 2016, no pet.) (a plea to the jurisdiction based on governmental immunity challenges a trial court's subject matter jurisdiction). The TTCA waives governmental immunity

---

[5] On appeal, the City does not advance an argument based on the notice provision included in its City Charter. Thus, we consider any such argument abandoned on appeal. To that extent, we do not consider AT&T's argument included in its briefing which otherwise addressed the City's charter.

for property damage, personal injury or death, but only in limited circumstances, and only if the claimant gives notice as prescribed by law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, .101. A claimant must give the governmental entity notice within six months of the incident which gives rise to the claim. *Id.* § 101.101(a).

In section 101.101 of the TTCA, two types of notice are provided—formal notice and actual notice. *Id*. §§ 101.101(a) - (c). These two notice provisions work in tandem. *Worsdale*, 578 S.W.3d at 70. The formal-notice requirements appear in subsection (a) and (b), while the actual-notice is provided for in subsection (c). *Id*. Together, the relevant provisions appear as follows:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
>> (1) the damage or injury claimed;
>>
>> (2) the time and place of the incident; and
>>
>> (3) the incident.
>
> (b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.
>
> (c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

*Id.* § 101.101. A failure of adequate notice within the appropriate time deprives a trial court of subject-matter jurisdiction and requires the dismissal of the case. *See* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

**B. Analysis**

Absent formal, written notice, a claim may proceed against a governmental unit only if the entity had actual notice of a claim. *See Worsdale*, 578 S.W.3d at 77. Here, it is undisputed that AT&T did not provide the City with formal notice within the prescribed period. Instead, AT&T relies on subsection (c)'s actual notice to show the required notice was met. *See id.* § 101.101(c). Interpreting subsection (c), the Supreme Court of Texas has held that this provision requires not only knowledge of some harm but also information sufficient to (1) identify the particular loss ultimately alleged, and (2) to alert the governmental unit to something impending to allow preparations to be made. *Worsdale*, 578 S.W.3d at 70-71; *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018); *see also See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c).

The record demonstrates, as of November 12, 2017, the City received notice of the following: (1) a 911 caller reported a fire hydrant leaking and spraying water; (2) the police department next notified the City's Utility Department, which soon issued an emergency 811 request; (3) after issuing the request, a work crew of the City began excavations to repair the damaged water main; (4) at approximately 1:30 p.m., city workers hit a buried telephone line belonging to AT&T; (5) the backhoe operator told the on-scene supervisor that AT&T's buried line was damaged after the backhoe struck the line; (6) on December 5, 2017, the supervisor filed an incident report with the City describing, "[a]t about 1:30 p.m. we hit a phone line."

The City contends the undisputed facts establish the City did not have actual notice as a matter of law. First, the City explains, as an excavator, it was required to provide forty-eight hours' notice of its intent to excavate through the Texas 811 notification center. *See* TEX. UTIL. CODE ANN. § 251.151. An exception applies when the excavator is performing an emergency excavation, to which the excavator can begin "immediately and shall take reasonable care to protect

8

underground facilities." *Id.* § 251.155(b). Due to the emergency situation, the City contends it began excavation immediately and that neither AT&T, nor USIC, responded to the emergency 811 request to warn of its underground telecommunication line. Considering the subject of this proceeding and the current stage of the litigation, we conclude this argument is not relevant.

Here, reliance on the emergency nature of the situation is irrelevant to whether the City had actual notice of the claim. Any disagreements on the timing of the City's actions, its authority to act, and the circumstances revolving about its actions are all factual disagreements that would be resolved by the fact finder if subject matter jurisdiction is otherwise conferred. Furthermore, the City's reliance on the emergency nature of the situation more aptly supports its position that it should not be held liable on the merits. As noted by the Supreme Court of Texas, however, "[w]hether the City believed it was liable or not is not the standard" applied for whether a governmental entity had actual notice of a claim under the TTCA. *Worsdale*, 578 S.W.3d at 67.

Next, the City argues there is no evidence it had actual notice because AT&T cannot cite to any communication between AT&T and the City about the incident within the six-month period following the occurrence, other than Mitchell's request to the Police Department to notify AT&T of the damaged telecommunication line, which it asserts was required by law. *Id*. TEX. UTIL. CODE ANN. § 251.159(a). The City contends the incident report demonstrates its lack of subjective awareness of fault. Specifically, it argues the report affirmatively points to USIC's failure to mark the location of the buried telecommunication line as the only cause or contributing factor for the incident. At their respective depositions, the City employees testified that USIC was at fault because they did not initially respond or took too long to respond to the City's 811 request.

The City relies on two cases to assert it did not have actual notice as required by the TTCA. First, in *City of Dallas v. Carbajal*, the plaintiff sued the City for injuries she sustained after driving

onto an excavated road. 324 S.W.3d 537, 538 (Tex. 2010). The responding police officer filed a written report where he described "there were no barricades blocking the gap in the road." *Id.* The Dallas Court of Appeals concluded the report provided actual notice to the City. *Id.* Noting that "merely investigating an accident is insufficient to provide actual notice," the Supreme Court reversed. *Id.* at 538. The Supreme Court held that the report "did not provide the City with subjective awareness of fault because it did not even imply, let alone expressly state, that the City was at fault." *Id.* at 539. The Court noted that the report did not note who failed to erect or maintain the barricades and such report was no more than a routine safety investigation. *Id.*

Second, in *City of San Antonio v. Tenorio*, the Supreme Court of Texas also found a police report's description of an incident to be insufficient to support actual notice of a claim. 543 S.W.3d at 778. There, a head-on car collision severely injured a woman and killed her husband. *Id.* at 774. The collision occurred after a motorist entered the highway going the wrong way. *Id.* Police officers were in active pursuit of the motorist as a suspect in an armed robbery. *Id.* The police report listed "Fleeing or Evading Police" as a factor and condition contributing to the crash. *Id.* at 778. However, the Supreme Court held that such information included in a police report did not amount to an express statement or even an implication of the City being at fault regarding the head-on collision. *Id.* The Court held the City did not have actual notice because "nothing in the crash report, witness statements, or case report indicate, either expressly or impliedly, that the [Police Department] subjectively believed its officers acted in error by initiating or continuing the pursuit such that they were in some manner responsible for the injuries." *Id.*

We view the record of this case as distinguishable from the facts presented in *Carbajal* and *Tenorio*. Here, Mitchell testified that incident reports are not prepared every time there is a water leak, but rather only "if there's any damages." The incident report then states, "we hit a phone

10

line," and further identifies: " Charges for Damages to: AT&T phone line." The City attempts to argue that Mitchell's statement in the report that "[t]he phone lines were still not marked when we left," affirmatively shows "USIC's failure to mark the location of Appellee's buried telecommunication line as the only cause or contributing factor for the Incident." The City asserts actual notice is lacking because AT&T ignores, like in *Carbajal*, "the possibility of USIC's responsibility for the City striking its underground telecommunication and, thus, ignored that the City did not have subjective awareness that its fault caused or contributed" to AT&T's damages. We disagree.

The Supreme Court has held the critical inquiry for actual notice involves "the governmental unit's actual anticipation of an alleged claim rather than subjective confirmation of its actual liability." *Worsdale*, 578 S.W.3d at 68. In *Worsdale*, after plaintiffs were injured when their motorcycle collided with a large dirt mound, the police report stated the road was currently blocked by a dirt pile that closed the roadway and there were no signs, barricades, or cones present to indicate the closed roadway. *Id.* Additionally, as part of the investigation, the officer spoke with city officials regarding responsibility for road maintenance and warning signs. *Id.* at 60. Although jurisdiction between the City and the county were disputed, the City removed the dirt pile and installed permanent road-closure signs and barricades, two days after the accident. *Id.* The Court held "a dirt pile completely obstructing an otherwise open road is itself a defect, or a 'fault,' that is necessarily attributable to someone," and that the "investigation went beyond the direct cause of the collision and instead delved into whether the City was charged with maintaining the road." *Id.* at 68.

Differing from the reports in *Carbajal* and *Tenorio*, Mitchell's incident report filed with the City plainly acknowledges "we hit a phone line." And based on deposition testimony, there is

11

no question here that workers of the City knew they struck AT&T's phone line while working the day of the incident. The City claims there is no showing that it "made the connection or had knowledge that the connection had been made" between damages and responsibility as alleged by AT&T. The incident report itself, however, shows Mitchell, acting in the capacity as the on-site supervisor of the city's work crew, made a connection between AT&T's damaged telephone line and the crew's activities during the repair of a water leak. Moreover, the work crew clearly understood the backhoe had struck and damaged the line during the crew's excavation of the hole. Rather than having a lack of awareness of fault, the City had such knowledge but shifted the blame or responsibility to another party. Essentially, the City argues the lines were not timely marked by USIC. The applicable standard for actual notice, however, is not whether the City believes it is liable or not. *Tenorio*, 543 S.W.3d at 776; *Worsdale*, 578 S.W.3d at 68. Rather, the standard is whether the City "has subjective awareness that its fault, as ultimately alleged by the claimant, produced or contributed to the claimed injuries." *Tenorio*, 543 S.W.3d at 776. Here, all three elements of actual notice under the TTCA were established by undisputed evidence of the City subjective knowledge of: (1) AT&T's property damage; (2) the City's fault that produced or contributed to the property damage; and (3) the identity of the parties involved. *Id*. Viewing the evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor, as we must, we conclude the City failed to establish as a matter of law that it lacked actual notice of AT&T's claim for property damages.

We overrule the City's first issue.

### IV.     THE WAIVER OF GOVERNMENTAL IMMUNITY

In its second issue, the City asserts the trial court erred in denying its plea to the jurisdiction because its utility crew was performing an activity—emergency repair of its water main—which

12

is closely related to or necessary to services and functions expressly designated as "governmental" under the TTCA. As compared to proprietary functions, the City argues waterworks and water and sewer related services are classified as governmental functions. Based on that classification, it further argues that full immunity is afforded for its performance of such activities. Although we agree in general terms that a municipality engaged in a governmental function is entitled to governmental immunity to the extent not waived, we disagree with the City to the extent it broadly argues the limited waiver afforded by the TTCA does not apply in this instance.

The Texas Constitution authorizes the Legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (citing Tex. Const. art. XI, § 13); *see also Gay v. City of Wichita Falls*, 457 S.W.3d 499, 504 (Tex. App.—El Paso 2014, no pet.) (recognizing the 1987 Texas constitutional amendment gave the Legislature authority to define governmental and proprietary functions, including the authority to reclassify definitions already existing at common law). Based on this grant of authority, governmental functions include waterworks and water and sewer service. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(11), (32). When performing governmental functions, municipalities derive governmental immunity from the state's sovereign immunity. *See City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). Like sovereign immunity, governmental immunity can be waived by the Legislature. *Id*.

The TTCA waives governmental immunity in limited circumstances. *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Relevant to this claim, section 101.021 of the TTCA provides that a governmental unit in the state is liable for "(1) property damage, . . . proximately caused by the wrongful act or omission or the negligence of an employee acting within

his scope of employment if: (A) the property damage, . . . arises from the operation or use of . . . motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law[.]" Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A), (B).

Here, the City is a governmental unit as defined by the TTCA. *Id*. § 101.001(3)(B). In seeking property damages, AT&T's live pleading asserted causes of action for negligence, negligence per se, or both. Specifically, it asserted that damages were proximately caused by employees of the City failing to control the motor-driven construction equipment such as to avoid cutting or otherwise damaging AT&T's buried cable. Lastly, AT&T asserted that the City's immunity was otherwise waived under the TTCA based on city employees' negligent operation of motor driven equipment.

To support these allegations, AT&T relies on testimony of city utility workers who were working on scene to repair a broken water line. These witnesses testified consistently that, while engaged in excavating a hole to repair a broken water line, an employee operating a motor-driven backhoe directly struck and damaged AT&T's buried line. Moreover, the testimony is corroborated by an incident report submitted to the City by supervisor Keith Mitchell, wherein he reported "we hit a phone line." Courts have held that a motor-driven backhoe qualifies as "motor-driven equipment" allowing for the application of the limited exception to immunity provided by the TTCA. *See City of Houston v. Sw. Bell Tel. Co.*, No. 01-16-00734-CV, 2017 WL 3262131 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (mem. op.); *Kilburn v. Fort Bend Cnty. Drainage Dist.*, 411 S.W.3d 33, 41 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Here, AT&T has alleged facts supporting its claim that its damages arise from a city employee's use of motor-driven equipment, i.e., a backhoe, and that there is proximate causation between the employee's alleged negligence and the damage to AT&T's line. Accordingly, we hold

the trial court did not err in denying the City's plea to the jurisdiction based on lack of subject matter jurisdiction.

We overrule the City's second issue.

## V.    CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.


GINA M. PALAFOX, Justice


November 22, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.