

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00288-CV

———————————————

LIVEABLE ARLINGTON, JADE COOK, AND GIBRAN FARAH ESPARZA,
Appellants

V.

CITY OF ARLINGTON, RICHARD GERTSON, JIM ROSS, HELEN MOISE,
RAUL H. GONZALEZ, NIKKIE HUNTER, ANDREW PIEL, REBECCA
BOXALL, LONG PHAM, BOWIE HOGG, AND BARBARA ODOM-WESLEY,
Appellees

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-342886-23

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellants Liveable Arlington, Jade Cook, and Gibran Farah Esparza sued Appellees the City of Arlington; Richard Gertson, Assistant Director of the Planning and Development Services Department for the City of Arlington; Jim Ross, Mayor of the City of Arlington; and Arlington City Council Members—Helen Moise, Raul H. Gonzalez, Nikkie Hunter, Andrew Piel, Rebecca Boxall, Long Pham, Bowie Hogg, and Barbara Odom-Wesley seeking injunctive, mandamus, and declaratory relief based upon the City Council's approval of the establishment of a drilling zone and new gas-drilling permits on land known as the Fulson Drill Site.

At the heart of the suit are two complaints: (1) Appellees acted in contravention of a City ordinance and state law in approving the drilling zone and new gas-drilling permits; and (2) the City failed to give proper notice of its actions. Appellants brought all of their claims against the City and against the named City officials in their official capacities as ultra vires claims. Appellees filed a plea to the jurisdiction alleging governmental immunity,[1] and the trial court granted the plea and dismissed all of Appellants' claims with prejudice.

---

[1] Although courts often use the terms sovereign immunity and governmental immunity interchangeably, we use the term governmental immunity in reference to the City and City officials. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). While sovereign immunity protects the State as well as "various divisions of state government, including agencies, boards, hospitals, and universities"

In their first issue, Appellants challenge the trial court's grant of the plea to the jurisdiction and dismissal of their claims. We overrule Appellants' first issue with one exception. Specifically, we hold that the trial court did not err by rejecting Appellant's argument that a City ordinance waived its governmental immunity. Further, governmental immunity protected Appellees from claims that they violated (1) the due-course-of-law provision of the Texas Constitution, (2) Section 253.005 of the Texas Local Government Code, or (3) a City ordinance. But Appellants' claims under the Texas Open Meetings Act (TOMA) survive Appellees' plea to the jurisdiction. We reverse and remand on that claim.

Appellants argue in their second issue that the trial court erred by denying their application for a temporary injunction on any surviving claims. We affirm the trial court's order denying the application for temporary injunction.

## II. Factual and Procedural Background

In 2003, the City adopted the Gas Drilling and Production Chapter of the Code of the City of Arlington (GDPO) to regulate the drilling and production of gas within the city limits. Under this version of the GDPO, the City Council had to approve a specific-use permit for any new gas well located within City limits. The GDPO was amended in 2011 to require a specific-use permit establishing the location of a drilling zone for any new gas-drilling permit rather than permitting individual well

from liability, governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Id.*

3

locations. After such a drilling zone was established according to the GDPO, any new gas-well permits within that drilling zone could be approved via an administrative process rather than requiring a vote of the City Council. The amended GDPO defines "drilling zone" as "[t]he area approved by the City Council that encloses all the wells on the drill site." The GDPO further makes it unlawful to drill any well "outside a drilling zone approved by the City Council that, at the surface of the ground, is located within six hundred (600) feet from a park or within six hundred (600) feet from a protected use." The GDPO gives the City Council authority to reduce the setback to 300 feet upon the "super-majority" vote of seven members of the council.

On August 18, 2009, prior to the 2011 GDPO amendments, the City Council approved zoning for an area known as the Fulson Drill Site, located at 5720 South Watson Road and 2453 East Sublett Road, and subsequently approved individual gas-well permits on that site in October 2009, January 2010, and April 2011. In 2023, and under the scheme of the GDPO 2011 amendments, Total E&P Barnett USA, LLC (Barnett) sought to establish a "drilling zone" on the Fulson Drill Site in order to drill additional gas wells. The Arlington Planning and Zoning Commission recommended approval of the establishment of a drilling zone on the Fulson Drill Site and an amendment to the existing specific-use permit for Barnett, and the matter was placed on the agenda for the May 23, 2023 meeting of the City Council.

4

Prior to the May 23 meeting, there was some concern about whether the Barnett proposed drilling zone was greater than 600 feet from a protected use. The City's in-house geographic-information-systems technician measured the distance at 599.3 feet by aerial photo but acknowledged that her measurement was not precise. The City hired a firm to conduct a survey, and that survey determined that the drilling zone was greater than 600 feet from a protected use.

The City Council provided notice of the proposed drilling zone on the May 23 meeting agenda as follows:

> Following the public hearing, consider an amendment to Specific Use Permit SUP09-05R to establish the location of a drilling zone on an existing well site located at 5720 South Watson Road and 2453 East Sublett Road. First reading of an ordinance establishing a gas well drill zone on certain property known as 5720 South Watson Road and 2453 East Sublett Road by adopting an amended Specific Use Permit for gas well drilling (SUP09-05R1); amending the Zoning District Map accordingly.

The notice included a staff report that fully detailed the history of the Fulson Drill Site and thoroughly analyzed the drilling-zone request.

In open discussion at the May 23 City Council meeting, Barnett was asked if it would be willing to reduce the size of the requested drilling zone. After the public hearing closed, the City Council voted 8–1 to approve Barnett's application but with a stipulation reducing the eastern, western, and northern boundaries of the drilling zone to ensure that they would be more than 600 feet from a protected use. This reduction

5

left an existing well outside of the proposed drilling zone. The City Council scheduled the application for a second reading on June 13, 2023.

The notice for the June 13 meeting reduced the legal description of the proposed drilling zone from 4,600 square feet to 2,200 square feet in accordance with the May 2023 amendment. The City Council approved Barnett's amended application by a vote of 8–1 and issued two new gas-well drilling permits within the established drilling zone (Barnett Drilling Zone). The establishment of the Barnett Drilling Zone was memorialized in City Ordinance No. 23-028, and the issuance of the two gas-well permits in that zone was memorialized in Resolution No. 23-154.

Appellants Cook and Esparza live in a home near but outside the Barnett Drilling Zone and also outside of the original proposed drilling zone. Appellant Liveable Arlington is a not-for-profit entity whose members live in Arlington and advocate for clean air, clean water, and responsible stewardship of the environment. After the City Council's May 23 meeting, Appellants filed suit seeking injunctive, mandamus, and declaratory relief. Appellants alleged that Appellees violated their duties under the City's ordinances, TOMA, and other laws of the State of Texas in their consideration and vote on the Barnett Drilling Zone at the May 23 and June 13 meetings. Appellants alleged that Appellees committed the following illegal acts that flow from an allegedly flawed process in approving the Barnett wells application and then taking actions in reliance on that flawed process:

6

- Fail[ed] to post adequate notice of the [Barnett] permit application considered by [Appellees] during the [May 23 m]eeting;

- Fail[ed] to follow Arlington City ordinances relating to the [Barnett application];

- Revis[ed] the [Barnett Drilling Zone] during the [May 23 m]eeting in contravention of the TOMA and city ordinances;

- Schedul[ed] the second hearing on the [Barnett] permits for consideration on June 13, 2023, despite these illegalities;

- Conduct[ed] the second reading of the [Barnett application] despite the illegal vote on the first reading, on June 13, 2023;

- Hear[d] and vot[ed] on applications for additional well permits at the Fulson [D]rill[ S]ite on June 13, 2023[,] despite the illegally declared [Barnett] Drilling Zone established on that drill[ ]site in violation of the city's ordinances and state law;

- Grant[ed] permits for new wells in the illegally established [Barnett] Drilling Zone at the Fulson [D]rill[ S]ite[;]

- Permitt[ed] wells in the thickly settled area of the municipality.

Appellants specifically pleaded causes of action against the City—and against the individual Appellees in their official capacities as ultra vires claims—for violations of the due-course-of-law rights guaranteed by the Texas Constitution, Section 253.005 of the Texas Local Government Code, the GDPO, and TOMA.

Appellees filed a plea to the jurisdiction arguing that the claims should be dismissed because the City's governmental immunity deprived the trial court of subject-matter jurisdiction. Appellees maintained that Appellants had not pleaded a valid waiver of governmental immunity and could not meet their evidentiary burden

7

to show a genuine issue of material fact as to any alleged waiver of governmental immunity.

On July 26, 2023, the trial court held a hearing on Appellants' application for a temporary injunction and Appellees' plea to the jurisdiction. At the conclusion of the hearing, the trial court orally denied both but signed an order denying only the application for a temporary injunction. Two weeks later, the trial court signed an order granting Appellees' plea to the jurisdiction and dismissing all of Appellants' claims with prejudice.

### III. Plea to the Jurisdiction

In their first issue, Appellants argue that the trial court erred by granting the plea to the jurisdiction.

### A. Standard of Review

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly raised in a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law reviewed de novo. *Id.* at 226.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when

8

necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* at 227. In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* Here, the City challenged jurisdiction on the pleadings and based on evidence.

## B. Discussion

Appellants contend that the GDPO expressly waives the City's immunity from suits. Appellants further contend that each of their causes of action for violations of (1) Section 253.005 of the Local Government Code, (2) the GDPO, (3) TOMA, and (4) the due-course-of-law right in Article I, Section 19 of the Texas Constitution survive Appellees' plea to the jurisdiction.

### 1. No Waiver by City Ordinance

Appellants argue that the City waived immunity from suit on all of their claims because the GDPO states that "[a]ny person aggrieved by the actions of the City Council may present to a court of record a petition, duly verified, setting forth that such decision is illegal in whole or in part, and specifying the grounds of the illegality."

Appellants acknowledge that city charters do not waive governmental immunity by simply stating that the municipal corporation may "sue and be sued." *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007). They contend, however, that the language in the GDPO is more specific and not susceptible to the same legal analysis. Appellants further rely on *City of Galveston v. State*, 217 S.W.3d 466 (Tex. 2007), to

9

support their position that cities have governmental immunity independent of the State and should be able to waive immunity through their own legislative processes.

In *City of Galveston*, the supreme court considered whether the State of Texas could sue one of its cities. *Id.* at 468. The State argued that because the city's immunity derived from the State, it "defie[d] logic" to allow that immunity to be asserted against the State. *Id.* at 473. The court disagreed, holding that the "major flaw in this reasoning is that it assumes the State 'gave' immunity to cities. That is simply not the case." *Id.* Contrary to Appellants' assertion, the court did not hold that cities could waive their own governmental immunity. *Id.* Instead, the court held that there was no waiver of immunity because Texas has long required the Texas Legislature's permission to bring suit against governmental entities. *Id.* at 474; *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 344 (Tex. 2006) (stating that a "waiver of governmental immunity involves policies best considered by the [l]egislature, and thus it could be argued that a city lacks authority to waive its own immunity from suit by ordinance or charter").

Absent any indication that the Texas Legislature has authorized the City to waive its immunity, we decline to hold that the GDPO waived the City's immunity from Appellants' claims.

### 2. Section 253.005 Claim

Appellants sought a declaration "that the [Barnett Drilling Zone] is located within the thickly settled part of the municipality and that therefore wells cannot be

permitted there pursuant to Texas Local Government Code § 253.005." They also sought injunctive relief based on the alleged violation of Section 253.005. Appellants thus argue that the Barnett Drilling Zone Ordinance is invalid because it was enacted in violation of Section 253.005. We disagree.

Section 253.005 provides as follows,

(a) Except as provided by Subsection (b), a municipality may lease oil, gas, or mineral land that it owns, in the manner and on the terms that the governing body of the municipality determines, for the benefit of the municipality. A lease under this section is not a sale under the law governing the sale of municipal land.

(b) A municipality may lease under this section a street, alley, or public square in the municipality if the lease prohibits the lessee from using the surface of the land for drilling, production, or other operations. In this subsection, "public square" does not include a dedicated public park.

(c) A well may not be drilled in the thickly settled part of the municipality or within 200 feet of a private residence.

Tex. Loc. Gov't Code Ann. § 253.005.

Appellees argue that Appellants take subsection (c)'s language out of context because subsection (c)'s prohibition on locating wells in "thickly settled" areas applies only to wells on land owned by the municipality. We must therefore construe the scope of Section 253.005(c).

The objective of statutory construction is to give effect to the legislature's intent. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *Arbuckle v. Wichita Cnty. Tex. Adult Prob.*, 643 S.W.3d 229, 233 (Tex. App.—Fort Worth 2022, no pet.). We begin with a look at the plain language of the statute. *ExxonMobil Pipeline*,

11

512 S.W.3d at 899. Absent ambiguity, our analysis will end there, as the supreme court has instructed us to give a statute its plain meaning. *Id.* Additionally, in looking at the statute, we presume that each word contained therein has a purpose and that when the legislature has omitted a word from the statute, it did so purposefully. *Id.*

Subsections (a) and (b) of Section 253.005 explicitly refer to the lease of land owned *by* a municipality. *See* Tex. Loc. Gov't Code Ann. § 253.005(a)–(b). Therefore, reading the entire section in context, the restriction in subsection (c) immediately following applies only to leases on land owned by a municipality. Moreover, the prior version of Section 253.005[2] contained the same language in a single paragraph without breaking it into subsections—clearly indicating that the restriction on locating wells in thickly settled portions of a city is applicable only to land owned by the city.

---

[2]As quoted in *Moore v. City of Beaumont*, 195 S.W.2d 968, 978–79 (Tex. App.—Beaumont 1946), *aff'd*, 202 S.W.2d 448 (Tex. 1947), and in the 1925 version of the Revised Civil Statutes (available at the Texas State Law Library website, https://www.sll.texas.gov/library-resources/collections/historical-texas-statutes/#1925), the former version of Section 253.005 read as follows:

> Cities and towns chartered or organized under the general laws of Texas, or by special Act or charter, which may own oil or mineral lands, shall have the power and right to lease such oil or mineral lands for the benefit of such town or city, but shall not lease for such purposes any street or alley or public square in said town or city, or any land therein dedicated by any person to public uses in such town or city; and no well shall be drilled within the thickly settled portion of any city or town, nor within two hundred feet of any private residence.

*See* Act of Mar. 18, 1919, 36th Leg., R.S., ch. 117, § 1, 1919 Tex. Gen. Laws 183, 183 (original enactment) (repealed 1987 as part of recodification in Local Government Code).

12

The City is not leasing any land that it owns in connection with the Barnett Drilling Zone. Therefore, neither Section 253.005 generally nor subsection (c) specifically applies to the Barnett Drilling Zone, and Appellants cannot show a waiver of governmental immunity based on such a violation. The trial court did not err by granting the plea to the jurisdiction on the claim that Appellees acted in violation of Section 253.005.

### 3. Ordinance-Based Claims

Appellants argue that the Barnett Drilling Zone Ordinance is invalid because it does not include all existing wells and is thus in violation of the GDPO. Appellants further contend that the City and the individual Appellees acted beyond the scope of their authority by violating the City's own ordinance and modifying the drilling zone so that it did not include all existing wells. We hold that the trial court did not err by granting the plea to the jurisdiction as to the claim that Ordinance No. 23-028, which established the Barnett Drilling Zone, is invalid because the ordinance establishes a drilling zone that does not encompass all existing wells and therefore conflicts with the GDPO.

Barnett sought to establish a drilling zone on the Fulson Drill Site that included all existing wells on the drill site. But including all existing wells created concern on whether the proposed drilling zone was within 600 feet of a protected use. At the May 23 meeting, the City Council modified the size of the proposed drilling zone from 4,600 square feet to 2,200 square feet to adjust the setbacks to ensure that all

13

wells were 600 feet from a protected use as required by the GDPO. After it did so, the modified drilling zone complied with the GDPO setback requirement but then did not comply with the GDPO requirement to include all existing wells.

To address Appellants' argument that the Barnett Drilling Zone Ordinance is invalid requires us to interpret and apply the language of all relevant City ordinances. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) (orig. proceeding) (providing that when statutory provisions overlap, we construe them "in a way that harmonizes rather than conflicts"); *see also Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016) ("We apply rules of statutory construction to construe municipal ordinances."). As previously stated, the GDPO required that drilling zones enclose all wells on the drill site and also required that the drilling zone must maintain a setback of not less than 600 feet from all protected uses. But Section 10.4.6.F.3 of the City's Unified Development Code (UDC) states as follows,

> When approving a specific use permit for a gas well drilling zone, the City Council may modify, reshape, or reposition a proposed drilling zone to create or adjust setbacks from protected land uses, establish conditions in the interest of the public welfare, and ensure compliance with this code and the [GDPO].

The City Council thus had the authority and discretion to modify the proposed drilling zone. *See Hous. Belt*, 487 S.W.3d at 161. The dispute is whether in doing so, its members exceeded the authority granted to them or acted in conflict with the law itself. *Id.* at 158.

14

Appellees contend that reducing the size of the drilling zone was authorized "in the interest of the public welfare" by ensuring that any future gas wells would be even farther away from the closest residence. The UDC specifically allows the City Council to modify or reshape proposed drilling zones "in the interest of the public welfare." However, Appellants argue that such a modification "in the interest of the public welfare" is not permitted to conflict with the GDPO requirement that a drilling zone include all existing wells.

To support their argument that the GDPO controls, Appellants rely on Section 1.02 of the GDPO, which states that "[t]o the extent that any provision of this Ordinance might be inconsistent or in conflict with the specific provisions of any other Ordinance of the City of Arlington, this Ordinance shall control with regard to the conflict." Appellees counter that the ordinance adopting Section 10.4.6.F.3 of the UDC—which was enacted after the GDPO—modifies the above provision in the GDPO. Section 3 of that ordinance states, "[I]nsofar as the provisions [of any other ordinance] might be inconsistent or in conflict with the provisions of this ordinance, . . . such conflicting provisions, if any, in such other ordinance or ordinances are hereby repealed." Therefore, to the extent that the Barnett Drilling Zone conflicted with the GDPO, Section 10.4.6.F.3 of the UDC allowing the City Council to modify a proposed drilling zone controls.

Because the UDC gave the City Council broad authority to modify drilling zones in the interest of the public welfare, and because the City Council's actions in so

15

modifying the proposed drilling zone were within that authority, the Barnett Drilling Zone Ordinance is not invalid as a violation of the GDPO, and the trial court did not err by granting the plea to the jurisdiction as to that claim.[3]  *See id.* at 158.

### 4. TOMA Claims

Appellants also alleged that Appellees violated TOMA in enacting the Barnett Drilling Zone Ordinance.  Section 551.142 of the Texas Government Code provides that "[a]n interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body."  Tex. Gov't Code Ann. § 551.142(a).  This provision in TOMA contains a clear and unambiguous waiver of immunity from suits seeking injunctive and mandamus relief. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 554 (Tex. 2019).  However, the waiver of immunity does not extend to suits for declaratory relief.  *Id.*

Appellants alleged in their petition that Appellees violated their duties under TOMA by failing to post the matters actually deliberated upon, amending the matters during the hearing, and failing to table any vote until such omissions and errors were cured.  Appellants asked the trial court (1) to issue mandamus to correct the acts

---

[3]Because the UDC contains the authority to modify the drilling zone as the City Council did, Appellants' claim that City officials acted ultra vires by approving the drilling zone also fails.  *See Hous. Belt*, 487 S.W.3d at 161 (noting that broad immunity for government officers' actions may be waived only when the government officer acts without legal authority—as defined by the language of the applicable law itself—or fails to perform a purely ministerial act).

16

complained of and to require Appellees to retract the improperly granted Barnett Drilling Zone Ordinance and the subsequently granted well permits and (2) to enjoin Appellees from further conduct relating to the alleged illegal actions. Appellants' requests for mandamus and injunctive relief are not barred by governmental immunity. *See id.*

Appellees argue that there is no waiver of governmental immunity because Appellants have not pleaded and cannot show a violation of TOMA. Appellees detail the City's compliance with the notice provisions of TOMA and argue that there was no TOMA violation. However, their merits-based attack does not implicate the trial court's jurisdiction. *See Scribner v. Treger*, No. 02-21-00277-CV, 2022 WL 714654, at *6 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (mem. op.). Because TOMA expressly waives governmental immunity for violations of the Act, when a governmental entity's arguments are couched in terms of whether a claim has merit, those claims should be resolved on the merits rather than in a plea to the jurisdiction. *See id.* at *9.

We hold that the trial court has jurisdiction to rule on Appellants' request for injunctive and mandamus relief for the alleged TOMA violations. *See Town of Shady Shores*, 590 S.W.3d at 554. Therefore, the trial court erred by granting Appellees' plea to the jurisdiction on the TOMA-based claims. We will further address Appellants' TOMA claims in our discussion of the second issue in which they challenge whether the trial court's denial of injunctive relief was an abuse of discretion. *See Tex. Disposal*

17

*Sys., Inc. v. City of Round Rock*, No. 03-22-00450-CV, 2023 WL 3727963, at *7 (Tex. App.—Austin May 31, 2023, no pet.) (mem. op.) (distinguishing pleading of valid TOMA claim from proving entitlement to temporary-injunctive relief on that claim).

### 5. Due-Course-of-Law Claims

Finally, Appellants allege they were denied due course of law under Article I, Section 19 of the Texas Constitution. We hold that the trial court did not err by granting Appellees' plea to the jurisdiction as to the due-course-of-law claims.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. This provision protects substantive and procedural rights. *Arlington Pro. Fire Fighters, Int'l Ass'n of Fire Fighters, AFL-CIO, Loc. 1329 v. City of Arlington,* No. 02-19-00156-CV, 2021 WL 4205012, at *35 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op); *Su Inn Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 683–84 (Tex. App.—Amarillo 1998, pet. denied).

Although Appellants acknowledge that governmental immunity prevents them from seeking money damages against Appellees, they argue that the trial court has jurisdiction over their suit because they seek equitable remedies—injunctive relief and a declaration voiding the Barnett Drilling Zone Ordinance on the ground that it was entered without due course of law because Appellees violated TOMA, Section 253.005 of the Local Government Code, and the GDPO in enacting it. *See City of*

18

*Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied). Because we have already determined that Appellants did not show a waiver of governmental immunity for their claims based on Section 253.005 and the GDPO, we need analyze only whether their surviving TOMA claim can be a basis for their due-course-of-law claim.

Due course of law is implicated under the Texas Constitution when the State or its agents deprive a person of a protected liberty or property interest. *Gill v. Hill*, No. 22-0913, 2024 WL 1819653, at *2 (Tex. Apr. 26, 2024); *see Bd. of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S. Ct. 2701, 2705 (1972). Appellants did not identify any specific liberty or property interest in their pleadings. On appeal, they argue that Appellees' acts will cause irreparable injury to their use and enjoyment of their real property and to the health of themselves and their children. But their evidence in the trial court focused only on the drilling of gas wells in general; they did not bring forward any evidence showing that the establishment of the Barnett Drilling Zone itself, or the addition of wells to a location where wells were already operating, deprived them of their health or the use and enjoyment of their real property.

Moreover, Appellants cannot rely on TOMA for their due-course claim. In *City of San Antonio v. Fourth Court of Appeals*, the supreme court held that TOMA has no due process implications and "is not a legislative scheme for service of process." 820 S.W.2d 762, 765 (Tex. 1991) (orig. proceeding). "Rather, its purpose is to provide 'openness at every stage of [a governmental body's] deliberations.'" *Id.* (quoting *Acker*

19

*v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990)); *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 466 (Tex. App.—Dallas 2007, no pet.). TOMA is not concerned with whether an individual citizen received sufficient notice of a proposed government action affecting a private interest, but whether notice of the proposed government action was sufficient to inform a member of the public. *City of San Antonio*, 820 S.W.2d at 765. Therefore, Appellants cannot rely on their TOMA claim as a basis for a due-course-of law claim that they were deprived of an individualized liberty or property interest.

Because a TOMA violation is not a predicate for a due-course-of-law claim and because Appellants failed to identify a liberty or property interest of which they were deprived, Appellants did not show that the City's governmental immunity was waived for their due-course-of-law claim. The trial court thus did not err by granting Appellees' plea to the jurisdiction with regard to this claim.

## C. Summary

The City did not waive immunity in the GDPO, and the trial court did not err by granting Appellees' plea to the jurisdiction for Appellants' Section 253.005, ordinance-based, and due-course-of-law violation claims. We overrule the first issue in part as it relates to those claims. But the trial court had jurisdiction to consider Appellants' TOMA-violation claims against Appellees. We sustain the first issue in part as it relates to those claims only. Thus, we must address Appellants' second

20

issue—whether the trial court abused its discretion by denying a temporary injunction on the surviving TOMA claims.

## IV. Temporary Injunction

In their second issue, Appellants argue that the trial court abused its discretion by denying their application for a temporary injunction for the alleged TOMA violations.

## A. Standard of Review and Applicable Law

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g).

The trial court exercises its sound discretion in deciding whether to issue a temporary injunction, and we may reverse that decision only if we conclude that the trial court abused its discretion because its actions were "so arbitrary that [they] exceeded the bounds of reasonable discretion." *Michael v. NE CS First Nat'l, LP*, No. 02-23-00307-CV, 2024 WL 1579009, at *5 (Tex. App.—Fort Worth Apr. 11, 2024, no pet. h.) (mem. op. on reh'g) (quoting *Butnaru*, 84 S.W.3d at 204). Our abuse-of-discretion review requires that we "view the evidence in the light most favorable to

21

the trial court's order [and that we indulge] every reasonable inference in its favor."

*IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). Thus, if the trial court must resolve a conflict in the evidence, its resolution of a fact issue is one to which we must defer. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.). However, we review the trial court's application of the law to established facts and the resolution of pure legal questions de novo. *Jelinis, LLC v. Hiran*, 557 S.W.3d 159, 165 (Tex. App.— Houston [14th Dist.] 2018, pet. denied).

## B. Discussion

Appellants argue on appeal that they were entitled to relief on their cause of action for TOMA violations because the City Council provided inadequate notice of the topics to be considered at the May 23 meeting.

To be entitled to injunctive relief, Appellants must show a probable right to recover on a cause of action against Appellees for a TOMA violation. *See Butnaru*, 84 S.W.3d at 204. While we do not resolve the merits of Appellants' TOMA claims when considering this element, we must determine whether the trial court acted within its discretion to conclude Appellants did not establish a probable right to recovery on their TOMA-based claims.

TOMA states that a governmental body "shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." Tex. Gov't Code Ann. § 551.041. Actions taken in violation of the notice requirements are

22

voidable. *Id.* § 551.141. The purposes of TOMA are to enable public access to and to increase public knowledge of government decision-making. *City of San Antonio*, 820 S.W.2d at 765. In reviewing notices under TOMA, we must ensure that the core purposes are served, but we need not inquire whether a notice was tailored to reach specific individuals whose private interests are most likely to be affected by the government action. *Id.*

The notice for the May 23 meeting provided the date, time, and place for the meeting. The notice further contained an agenda item for the proposed drilling zone on the already existing Fulson Drill Site, and it provided the address for the proposed drilling zone. The May 23 notice informed readers (1) that the City Council would be considering a proposed drilling zone, (2) where that proposed drilling zone was located, and (3) that the purpose of Barnett's application was to establish a drilling zone. Thus, any interested reader had sufficient notice that the City Council would be considering action relating to the establishment of a drilling zone in the location of the already existing Fulson Drill Site for the purpose of drilling additional wells—that is all TOMA requires. *Id.* at 765–66.

Appellants argue that the notice was insufficient because the City Council modified the size of the drilling zone at the meeting altering the nature of the agenda item and rendering the prior notice ineffective. But the notice for the May 23 meeting included a staff report analyzing the proposed drilling zone's location. That analysis stated that the City Council might need to modify the proposed drilling zone by

reducing its size. Therefore, the reader of the agenda item was put on notice of the possibility that the City Council could modify the size of the drilling zone. TOMA does not require that a notice state all of the consequences that may necessarily flow from the consideration of an agenda item. *Tex. Turnpike Auth. v. City of Fort Worth*, 554 S.W.2d 675, 676 (Tex. 1977).[4]

Appellants state that this case is analogous to *Lugo v. Donna Independent School District Board of Trustees*, 557 S.W.3d 93 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). In *Lugo*, the court held the Donna School Board of Trustees violated TOMA by appointing replacement trustees at a Board meeting when the agenda item specifically stated only that the Board would discuss calling a special election to fill vacant board seats. *Id.* at 98. The court held that the agenda item did not adequately notify the public that the Board would appoint replacement trustees. *Id.* Unlike in *Lugo*, the notice provided by the City informed the public that a modification of the proposed drilling zone was a potential action.

Because the temporary-injunction evidence supports a conclusion that the May 2023 meeting notice complied with the requirements of TOMA, we hold that

---

[4]Appellants argue that in modifying the size of the Barnett Drilling Zone at the May 2023 meeting, the City Council, in effect, repealed part of the GDPO without giving notice of such an intent. But whether the GDPO and UDC can be harmonized to authorize such a reduction in drilling zone size did not need to be enumerated as part of the TOMA notice. *See Tex. Turnpike Auth.*, 554 S.W.2d at 676.

Appellants have not established that the trial court abused its discretion by denying a temporary injunction on their TOMA claims.[5]

## V. Conclusion

Having sustained Appellants' first issue in part, we reverse the portion of the trial court's order granting the plea to the jurisdiction as to the TOMA claims for mandamus and injunctive relief and dismissing those claims with prejudice, but we affirm the remainder of the order. Because we overrule Appellants' second issue, we affirm the trial court's order denying Appellants' application for a temporary injunction on their TOMA claims. We remand this case to the trial court solely for further proceedings on Appellants' TOMA claims.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: May 30, 2024

---

[5]In their Second Amended Petition, Appellants alleged that Richard Gertson, Assistant Director of the Planning and Development Services Department for the City of Arlington, utilized private deliberations in violation of TOMA to influence the City Council to approve the Barnett Drilling Zone. Appellants further alleged that Andrew Piel, the elected representative for District 4 on the City Council, violated TOMA by deliberating with the mayor and the City Council and influencing their vote on the Barnett Drilling Zone. Appellant's briefing does not identify any evidence in support of these allegations, and in reviewing the record, we did not find any evidence to substantiate the allegations. Thus, the trial court did not abuse its discretion by denying a temporary injunction as to these specific pleaded claims.